C. J. WENDT, Appellee, v. GEORGE HAGLESTANGE, Appellant.

**BILLS AND NOTES:** Payment and Discharge—Evidence—Sufficiency. Evidence reviewed, and held to sustain the plea that certain sums received by the holder of a note should be indorsed thereon as payments.

**APPEAL AND ERROR:** Review—Questions of Fact—Equity Cause —Hearing De Novo. In spite of the deference given by the appellate court to the findings of fact by the trial court, even in an equity cause, such findings will be overruled when the appellate court has advantages equal, if not superior, to the trial court in finding the real truth of a pure fact case.

*Appeal from Van Buren District Court.*—D. M. ANDERSON, Judge.

MONDAY, FEBRUARY 19, 1917.

ACTION upon a promissory note. The defendant pleaded payment and a counterclaim. There was a judgment for the plaintiff for the full amount of the note, less a payment of $300 admitted by the plaintiff. The defendant appeals.—*Modified and affirmed.*

*Sloan & Sloan* and *W. D. McCormick,* for appellant.

*Newbold & Newbold,* for appellee.

EVANS, J.—1. The note sued on was
for $1,256, dated September 1, 1905, with
annual interest at 5 per cent. The petition
allowed a credit thereon of $300, paid March
18, 1907. The answer admitted the note,
and pleaded payments thereon in addition to the payment
admitted by the plaintiff, as follows: March 10, 1906, $200;
February 8, 1907, $325; March 19, 1907, $300. A counter-
claim was also pleaded, which will be noticed later. For
some reason not apparent in the record, the parties agreed
that the case should be tried on the equity side of the court,
and it was so tried, and it is now submitted here for trial
*de novo*. Only fact questions are involved. These have to
do mainly with the three items of credit claimed by the de-
fendant and denied by the plaintiff, which are above set
forth. It is practically undisputed that the defendant did
pay to the plaintiff $200 on March 10, 1906, and $325 on
February 8, 1907, but it is claimed that these payments
were made upon matters that were entirely outside of the
note. For the plaintiff, it is contended that the $200 was
in part payment for a pair of mules sold to the defendant
by the plaintiff, and that the $325 was paid to the plaintiff
on a certain land purchase made by the defendant from one
Satterlee, for which the plaintiff advanced the money to
Satterlee and took title in his own name as security. The
defendant contends that the mule transaction and the Sat-
terlee deal were both included in the $1,256 note, and this
is the decisive question, so far as such two claims are con-
cerned. On this question, the defendant affirms and the
plaintiff denies, and we are driven to a careful consideration
of the attendant circumstances, in order to determine where
the best corroboration lies. The parties are brothers-in-law
and lived at Farmington. Many years ago, they had been in
partnership in the ownership of a livery stable, but such
partnership was terminated many years prior to the trans-

<div style="margin-note">

1. BILLS AND
NOTES: pay-
ment and dis-
charge: evi-
dence: suffi-
ciency.

</div>

actions involved herein. For a year or two prior to these transactions, they had occasionally joined together in the purchase of horses for shipment and resale, but they settled each transaction between themselves at its close. The defendant appears to have been a man of limited means, and the plaintiff, a man of more ready means. When the plaintiff retired from the livery business, he sold his interest to one Thero, and took his note therefor, with defendant as surety. Thero became insolvent, and the defendant thereby became the loser to the extent of several hundred dollars. This debt was patiently carried by the plaintiff for many years. It fairly appears that, some time before September 1, 1905, the defendant had given his note in renewal of the Thero note, and that the plaintiff had at that time generously waived the accrued interest, either in whole or in part. The note in suit was drawn by the defendant, and the computation for it was made by him. He claims to have entered upon his book of original entry at the same time the following:

"September 1, 1905, Bal. due on note, ....$712.75
"September 1, 1905, Amt. due Pd. Satterlee,
    with interest, ...................... 262.50
"September 1, 1905, Amt. due for mules,
    with interest from March 15, ......... 280.75

"Settled by note from date............$1,256.00"

According to the defendant, the three items here presented are the items for which the note was given. This contention is denied by the plaintiff as a witness, but he is wholly unable to account for the items that did go into the note. He is able to specify only the $700 note and $100 which he claims to have loaned the defendant about that time, such loan being denied by the defendant. The substance of plaintiff's testimony is summed up by him in the following, which we quote from his examination:

"Q. Why didn't you include all these items? A. We didn't include the land; that had nothing to do with it, and the mules; the other we included. I couldn't say what he put in there or nothing about it; I didn't pay a bit of attention. He wrote the note; I didn't see him write the note. Q. Can you give me some idea of what he did include? A. No, sir, I didn't ask when he gave me the note. I know that the note was $1,256. Q. You concluded all your matters were settled? A. I supposed it was; I left it to him."

The occasion for giving the $1,256 note was that the plaintiff was about to remove from Farmington to Fort Madison, and he suggested to the defendant that they have a settlement. Concededly, the note was intended as a settlement. The plaintiff contends, however, that the defendant was not owing him for the mules at the time the note was executed, but that the transaction was subsequently had on October 24, 1905. For the defendant, it is contended that he purchased the mules in March, 1905, and was to pay for them when he sold them. The circumstances leading up to this transaction were that, on March 15, 1905, the plaintiff had bid off these mules at a public sale. They were not in good condition for the purpose of resale. He immediately offered them to the defendant at the same price at which he had bid them off, with a further understanding that they would be fitted up and that the defendant should pay the plaintiff for them when they were sold. The defendant claims to have accepted the offer. He took the mules to his own place on the same day, and continued to hold possession of them at all times down to the day of settlement.

The plaintiff's version of the affair is that he simply allowed the defendant to use the mules for his own convenience, and that nothing had been said between him and the defendant concerning the purchase of the mules by the

defendant until October 24th, at which time he proposed
the sale and the defendant accepted.  The defendant is cor-
roborated in his story by the conceded fact of possession.
He is further corroborated by the fact that, on October 21st,
the plaintiff held a public sale of his personal property.
This was just one week before his final departure for Fort
Madison.  The mules were not included in the sale, nor is
there any reason suggested by the plaintiff why they should
not have been so included.  In view of the fact that his sale
was a closing-out sale because of his contemplated removal,
this circumstance is consistent with the story of the defend-
ant and inconsistent with that of the plaintiff.  Further-
more, the $200 payment was substantially less than the
agreed price of the mules.  Nothing was ever said on that
subject between the parties, neither at the time nor since.
The parties met frequently.  The plaintiff moved back to
Farmington in 1911.  The alleged open account due him for
the mules was never mentioned by him until the bringing
of this suit.  If there was an open account due him on that
item, he allowed it to outlaw without a suggestion or re-
quest that it be either paid or settled by note.  The story
of the defendant is fully corroborated by the testimony of
his wife.  We attach more importance, however, to the cor-
roboration by the circumstances appearing in evidence.  We
think the clear preponderance is with the defendant at this
point, and that it must be found that the purchase price
of the mules was included in the note.  That being so, the
conceded payment of March 10, 1906, should be applied as
a credit upon the note.

Turning now to the Satterlee transaction:  This was
had a few months before the execution of the settlement
note.  The defendant had bargained with one Satterlee for
a 20-acre timber lot for $250, but was without money to pay
therefor.  The plaintiff paid the amount for him and took
title from Satterlee to himself.  Both parties agreed that

he was to turn the property over upon a reimbursement of the purchase price. The defendant was in possession and removed more or less timber therefrom. This transaction, therefore, antedated the settlement note, and might readily have been included therein. In view of the fact, however, that the plaintiff was fully protected by the holding of title to the land, it would not be incredible if this item had been omitted from the consideration of the note, and we must look again to circumstances for corroboration one way or the other. On February 8, 1907, the defendant paid $325 in cash. At the same time, the plaintiff executed a deed to the defendant's wife for the timber lot. There does not appear to have been any computation of the actual amount due the plaintiff on the Satterlee transaction. He was paid a total of $325, which was clearly an over-payment of the amount actually due. This circumstance is quite consistent with the claim of the defendant that the amount thus paid was to be credited upon his note, on the theory that the Satterlee item had been included therein. On this theory, there was no occasion for a computation of the item at the time of this payment. The only explanation offered by the plaintiff is that he himself applied the $25 on the mule account, and that he only received $250 on the other transaction. He actually receipted to defendant's wife, however, for $300, and he does not deny receipt of $25 additional from defendant. This $300 payment was furnished by the defendant's wife, out of funds which she had recently received from her parents. The arrangement between her and her husband was that she would pay $300 on the note if she could have the deed made in her name; and it was so done. Her check on the bank is produced in evidence, with notations thereon which appear to have been made at the time. We think it must be found that this Satterlee item was included in the note, and that the $325 payment of February 8, 1907, should, therefore, be endorsed as a credit upon the note.

The other item of dispute as to credits involves an alleged payment of $300. The defendant claims two payments of such amount on March 18 and 19, 1907, respectively. The plaintiff in his petition conceded the payment of $300 on March 18, 1907. It is clearly proved, by check dated March 19, 1907, with plaintiff's endorsement thereon, that a payment of $300 was made on March 19th. The defendant contends that on the day previous he had paid to the plaintiff a like amount in currency. This testimony has the corroboration of the plaintiff's concession in his petition. Plaintiff as a witness contends, however, that he received only one payment of such amount, and that was the payment by check, and that such was the payment which he had in mind when he conceded it in the petition under date of March 18th. Again, we have had to scrutinize the circumstances very closely, in order to arrive at what we believe to be the truth at this point. A claim of payment by currency is not assuring as a matter of first impression. Where a creditor commits himself to an admission of the receipt of an amount to be credited, he incurs some peril if he mistakes the date. The real payment may later be proved upon him under a different and correct date; and his mistake and concession of payment on a wrong date may become unwelcome corroboration to a claim of the debtor that he paid him *currency* on the conceded date. The story of the defendant is that he carried to the plaintiff at Fort Madison on March 18, 1907, $300 in currency, and that the same represented the selling price of a team of horses. Upon returning home on the same day, he found awaiting him a postal card from the plaintiff, advising him that he had purchased some property and would like to receive $300. The defendant answered the postal card on the same day as follows: "Make your deal. Will send same by Wednesday." And thereupon, under date of March 19th, the defendant's wife drew her check and mailed it to the plaintiff. The postal

card which had been written by the plaintiff to the defendant was concededly written to him some time before March 18th, perhaps on the 17th. If the defendant visited the plaintiff on March 18th, and paid him $300 in currency, he complied with the request of the previous postal card without knowing it; and nothing appears to have been said between him and the plaintiff on the subject. When the defendant reached home at Farmington and found such postal card, he must have known that he had given a practical answer to it by the payment which he had made. The postal card which he sent in reply was not only mailed by him on the 18th, but was mailed early enough in the day to reach the plaintiff on the same date, as indicated by the postmark thereon. Pursuant to this postal card, the plaintiff received the check the following day. The plaintiff did not actually endorse the payment on the back of this note. His method of giving credit was that he made a "slip" and pinned that, with the postal card, to the note. The postal card bearing the date March 18th might have resulted in misleading the plaintiff later as to the date of such credit. We think the probabilities at this point, as they appear from the circumstances here indicated, are quite against the defendant, and render his claim somewhat incredible. The burden is on him to establish the payment. The only corroboration the story has is the concession of the plaintiff in his petition. Inasmuch as both dates figured so prominently in the transaction, the first in the postal card and the second in the check, and as the card, with its date of March 18th, was all that was left in the hands of the plaintiff as a memorandum, his concession is quite satisfactorily explained; and we are quite convinced, from the circumstances herein indicated, that such concession was intended to apply to the check, and that he was merely mistaken in the correct date. We find the issues against the defendant at this point.

2. Turning to defendant's counterclaim: The princi-

pal item therein is $175, being one half the value of a team which had been jointly purchased as alleged, and which was taken by the plaintiff for his own use and later disposed of. There is a direct conflict in the testimony of the two parties concerning the same. If the team belonged jointly to the two parties and was appropriated by the plaintiff, it was so appropriated before the note in suit was given, although it was not sold until later. We can conceive of no reason why it should have been overlooked in the settlement. In view of the unequal resources of the two parties, it is difficult to conceive of such an item's being ignored and unadjusted for any considerable length of time. It does not appear that the item was ever discussed between them in any conversation. The corroborating circumstances and probabilities are clearly with the plaintiff at this point.

Another item of $30 is claimed for two hogs which were butchered for the plaintiff by the defendant and delivered to him. The plaintiff concedes that he received the hogs, but contends that he paid for them then and there. He is corroborated by his wife, who was present at the time, and who personally secured the money with which payment was made. The circumstances of payment are given in detail and appear plausible. We find this issue against the defendant. There are other small items included in his counterclaim, all of which are denied by the plaintiff. We have examined the evidence carefully, and reach the conclusion that none of the items are fairly sustained.

2. APPEAL AND ERROR: review: questions of fact: equity cause: hearing *do novo.* It is strongly urged by the appellee that the trial court had better opportunity of examining the witnesses than we can have, and for that reason the findings of fact below should not be disturbed. It is true that we attach weight, even in an equity case, to the findings of fact by the trial court, because in some respects there are advantages available to the trial judge which are not avail-

able to us. On the other hand, cases come before us not infrequently where the trial judge was manifestly at a disadvantage because of the conflict and confusion of testimony. In such cases, the real facts are sometimes so elusive and concealed that only a careful reading and re-reading of the written testimony in its completeness will enable a satisfactory finding thereon. This appears to be such a case. We reach the conclusion already indicated that the Satterlee item and the item for mules were included in the note, and that the defendant is entitled to credit thereon for the two.payments totalling $525. To this extent, the decree below is reversed. In all other respects, it is affirmed. Costs will be apportioned. Each party will pay for printing his own briefs and one half of all other costs.—*Modified and affirmed.*

GAYNOR, C. J., LADD and SALINGER, JJ., concur.